1
2
3
4
5
6

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

7
8
9

STEVEN KINFORD,                      )        3:11-cv-00701-RCJ (WGC)
                                     )
10              Plaintiff,           )        **REPORT AND RECOMMENDATION**
                                     )        **OF U.S. MAGISTRATE JUDGE**
11       vs.                         )
                                     )
12   ROBERT BANNISTER, *et. al.*     )
                                     )
13              Defendants.          )
                                     )
_____)

14
15      This Report and Recommendation is made to the Honorable Robert C. Jones, Chief

16   United States District Judge. The action was referred to the undersigned Magistrate Judge

17   pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the

18   court is Defendant Philip Schlager, M.D.'s Motion to Dismiss. (Doc. # 32.)[1] Plaintiff opposed

19   (Doc. # 36) and Defendant replied (Doc. # 39). After a thorough review, the court recommends

20   that Defendant's motion be granted in part and denied in part.

### I. BACKGROUND

21      At all relevant times, Plaintiff Steven Kinford was an inmate in custody of the Nevada

22   Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 26) at 1.) The events giving rise to

23   this litigation took place while Plaintiff was housed at Northern Nevada Correctional Center.

24   (*Id.*). Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants

25   are Robert Bannister, Marsha Johns, David Marr, and Philip Schlager. (*Id.* at 2.)

26      On screening, the court determined that Plaintiff states a colorable Eighth Amendment

27
28

_____

[1] Refers to court's docket number.

claim for deliberate indifference to a serious medical need. (Screening Order (Doc. # 3) at 1.) Plaintiff alleges that he has steel screws and a steel plate in his face, resulting from surgery after a motorcycle accident. (Doc. # 26 at 3, 4, 7.) He further alleges that those screws have come loose, and that the plate has a burr, both of which cause him pain. (*Id*.) He claims that this occurred in 2008, and defendants Johns, Marr, and Bannister were on the Utilization Review Panel and denied Plaintiff's surgery until he grieved the issue. (*Id*. at 4.) Then, in December of 2010, Plaintiff claims that he tried for several months to get help for his pain, he was admitted to the Regional Medical Facility. (*Id*. at 5.) Plaintiff was subsequently permitted to see a neurologist, whom he claims alerted Plaintiff as well as Defendants that Plaintiff had several screws that needed to be removed. (*Id*.) Plaintiff alleges that Defendants again refused the surgery, and refused to prescribe Plaintiff pain medication. (*Id*.) Plaintiff was eventually permitted to have the surgery for removal of the screws, and the surgeon found a burr on a plate located on Plaintiff's face. (*Id*. at 7.) Plaintiff asserts that the burr was not removed, and that he still has additional screws in his face that are causing him pain. (*Id*.)

With respect to defendant Schlager, Plaintiff alleges that he was the surgeon that was supposed to remove the screws from Plaintiff's face in 2008. (Doc. # 26 at 9.) Plaintiff claims that defendant Schlager only performed a partial surgery, leaving a screw and the damaged plate in Plaintiff's face. (*Id*.) Plaintiff contends that defendant Schlager knew that the plate and screws were causing Plaintiff pain, yet decided not to remove them, causing Plaintiff pain. (*Id*.) He asserts that defendant Schlager was deliberately indifferent to his serious medical need. (*Id*.)

Defendant Philip Schlager, M.D., moves to dismiss Plaintiff's Complaint, arguing: (1) he is not a state actor; (2) no constitutional violation has been alleged against him; (3) insofar as Plaintiff is asserting a state law claim for medical malpractice, he has failed to comply with Nevada law; and (4) his claims are barred by the applicable statute of limitations. (Doc. # 32.)[2]

---

[2] The remaining defendants have answered Plaintiff's Complaint. (Doc. # 37.)

1

2 ## II.  LEGAL STANDARD

3 ### A.  Motion to Dismiss

4 "A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a

5 question of law." *North Star Int'l v. Ariz. Corp. Comm'n.,* 720 F.2d 578, 580 (9th Cir. 1983)

6 (citation omitted). Under Rule 8(a), "a claim for relief must contain…a short and plain

7 statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The

8 Supreme Court has found that at minimum, a plaintiff should state "enough facts to state a

9 claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

10 (2007). The complaint need not contain detailed factual allegations, but it must contain more

11 than "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citation omitted).

12 The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice

13 of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and

14 citation omitted).

15 In considering a motion to dismiss for failure to state a claim upon which relief may be

16 granted, all material allegations in the complaint are accepted as true and are to be construed

17 in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.2d 336,

18 337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal

19 conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements

20 of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation

21 omitted). "While legal conclusions can provide the framework of a complaint, they must be

22 supported by factual allegations." *Id.* at 679.  In addition, pro se pleadings must be liberally

23 construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("we continue to construe

24 *pro se* filings liberally when evaluating them under *Iqbal*"). As a general rule, the court may not

25 consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state

26 a claim without converting it into a motion for summary judgment. *See Lee v. City of Los*

27 *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

28

**B. Summary Judgment**

To the extent Defendant relies on documents outside the four-corners of the Complaint, it may be necessary to convert the motion into one for summary judgment, which is governed by the standard set forth below.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.  1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp.  v.  Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*  at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When

4

the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ]  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.  Brokerage Co.  v.  Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.  2000) (internal citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v.  S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

5

1    drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

2    significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations

3    omitted).

### III. DISCUSSION

**A. State Action**

6    In the Complaint, Plaintiff alleges that defendant Schlager is employed as a surgeon for

7    NNCC.  (Doc. # 26 at 2.) Defendant Schlager asserts that this is incorrect; instead, he is a

8    private physician at Carson Medical Group, who provided medical consulting services to an

9    inmate at NDOC's request. (Doc. # 32 at 2:15-19.) Plaintiff appears to concede that defendant

10   Schlager was a private physician under contract with NDOC to provide inmate care, but argues

11   that the requirement of state action is still met under these circumstances. (Doc. # 36 at 3.)

12   For purposes of a motion to dismiss, the court must accept Plaintiff's allegation that

13   defendant Schlager was employed by NDOC as a surgeon as true. *See  Cahill v. Liberty Mut*.

14   *Ins. Co.,* 80 F.2d 336, 337-38 (9th Cir. 1996) (citation omitted). Accordingly, Defendant's

15   motion to dismiss on the basis that he is not a state actor should be denied. Even if the court

16   were to consider defendant Schlager's statement that he was a private physician who consulted

17   with Plaintiff at NDOC's request, thereby converting the motion into one for summary

18   judgment, the court finds authority exists to establish state action on the part of defendant

19   Schlager, or at the very least a genuine issue of material fact exists as to whether defendant

20   Schlager is a state actor.

21   A defendant acts under color of state law when he or she has "exercised power 'possessed

22   by virtue of state law and made possible only because the wrongdoer is clothed with the

23   authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v.*

24   *Classic*, 313 U.S. 299, 326 (1941)); *see also Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981);

25   *Anderson v.  Warner*, 451 F.3d 1063, 1068 (9th Cir.  2006).

26   The United States Supreme Court has specifically held that physicians who contract with

27   prisons to provide medical services are acting under color of state law.  *See West*, 487 U.S. at

28

6

53-54; *see also Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (per curiam); *but see Florer v. Congregation Pidyon Shevuyim*, 639 F.3d 916, 927 (9th Cir. 2011) (acknowledging the ruling in *West*, but finding that private entity operating as contract chaplain to Washington State prison system was not a state actor for purposes of § 1983).

Defendant argues that his circumstances are distinguished from those in *West* because he provided services at his private office, and not at the prison. (*See* Doc. # 39 at 4.)

This was not a distinction drawn by the court in *West*. Rather, the court held that the defendant, "a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury. Such conduct is fairly attributable to the State." *West*, 487 U.S. at 53. The Court focused on the fact that inmates "must rely on prison authorities to treat [their] medical needs" and as a result, "the State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated," and this obligation can be delegated to private physicians. *Id.* at 54-55 (internal quotation marks and citations omitted). The Supreme Court was clear: "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.* at 56. Moreover, the Supreme Court found the fact that a physician does not work exclusively for the prison was of no import. *See id.* at 56-57.

> Nor does the fact that Doctor Atkins' employment contract did not require him to work exclusively for the prison make him any less a state actor than if he performed those duties as a full-time, permanent member of the state prison medical staff. It is the physician's function while working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law.

*Id.* at 56.

Defendant Schlager concedes that he was a private physician who provided medical consulting services to an inmate at NDOC's request. (Doc. # 32 at 2.) Any remaining details of the relationship between defendant Schlager and NDOC are not clear. Defendant Schlager provides no additional details, and Plaintiff has not had an opportunity to conduct discovery

7

1  on this issue.  It is not apparent whether there is a contract between NDOC and defendant

2  Schlager, and if so, what terms are included therein. The court only notes that the fact that

3  services may have been provided at a location other than the prison is not dispositive.  (*See e.g.,*

4  *George v. Sonoma County Sheriff's Dept.*, 732 F.Supp.2d 922, 935 (N.D. Cal. 2010) ("The fact

5  that the Sutter Defendants and their doctors perform their services at a location other than the

6  jail is not dispositive.") (citing *Dixon*, 2010 WL 431186, at *5).

7       For the foregoing reasons, defendant's Schlager's motion to dismiss or motion for

8  summary judgment on the ground that he is not a state actor should be denied at this juncture.

9  **B. Sufficiency of Eighth Amendment Allegations**

10       A prisoner can establish an Eighth Amendment violation arising from deficient medical

11  care if he can prove that prison officials were deliberately indifferent to a serious medical need.

12  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "The requirement of deliberate indifference is less

13  stringent in cases involving a prisoner's medical needs than in other cases involving harm to

14  incarcerated individuals because '[t]he State's responsibility to provide inmates with medical

15  care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*,

16  974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104

17  F.3d. 1133 (9th Cir. 1997).  "In deciding whether there has been deliberate indifference to an

18  inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors

19  or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

20       A finding of deliberate indifference involves the examination of two elements: "the

21  seriousness of the prisoner's medical need and the nature of the defendant's responses to that

22  need." *McGuckin v. Smith*, 974 F.2d at 1059.  "A 'serious' medical need exists if the failure to

23  treat a prisoner's condition could result in further significant injury or the 'unnecessary and

24  wanton infliction of pain.'" *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are

25  "serious" in nature include "an injury that a reasonable doctor or patient would find important

26  and worthy of comment or treatment; the presence of a medical condition that significantly

27  affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at

28

1  1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and

2  finding that inmate whose jaw was broken and mouth was wired shut for several months

3  demonstrated a serious medical need).

4       If the medical needs are serious, Plaintiff must show that Defendants acted with

5  deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a

6  high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate

7  indifference entails something more than medical malpractice or even gross negligence. *Id*.

8  Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*,

9  974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows

10  of and disregards an excessive risk to inmate health or safety; the official must both be aware

11  of the facts which the inference could be drawn that a substantial risk of serious harm exists,

12  and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also*

13  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858).

14       Here, Plaintiff has alleged that despite his knowledge of that the screws and burr in

15  Plaintiff's face were causing him pain, defendant Schlager did not remove them all, which

16  resulted in Plaintiff continuing to experience pain. Taking the allegations as true, the court

17  finds, as it did on screening, that Plaintiff has sufficiently alleged that he suffered from a

18  serious medical condition, and that defendant Schlager knew of and disregarded an excessive

19  risk to his health. Defendant's motion to dismiss Plaintiff's Complaint on this basis should be

20  denied. To the extent defendant Schlager relies on matters outside the four-corners of the

21  Complaint, and seeks to transform this motion into one for summary judgment, the court

22  declines to do so as Plaintiff has not had an opportunity to conduct discovery with respect to

23  the substantive aspects of his claim.

24  **C. State Law Medical Malpractice Claim**

25       To the extent Plaintiff's Complaint can be construed as asserting a claim for medical

26  malpractice against defendant Schlager, the court finds that this claim must be dismissed as

27  a result of Plaintiff's failure to comply with Nevada Revised Statute 41A.071.

28

1    Nevada law provides:

2    If an action for medical malpractice or dental malpractice is filed in the district
     court, the district court shall dismiss the action, without prejudice, if the action
3    is filed without an affidavit, supporting the allegations contained in the action,
     submitted by a medical expert who practices or who has practiced in an area that
4    is substantially similar to the type of practice engaged in at the time of the alleged
     malpractice.
5    Nev. Rev. Stat. 41A.071.

6        To the extent Plaintiff is asserting a claim for medical malpractice he failed to submit

7    an affidavit of merit when he filed suit.  The Nevada Supreme Court has held that a complaint

8    filed without the supporting affidavit is "void ab initio, meaning it is of no force and effect."

9    *Washoe Med. Ctr. v. Second Judicial Dist. Ct.*, 148 P.3d 790, 794, 122 Nev. 1298 (2006).

10   Such a complaint "does not legally exist and thus it cannot be amended." *Id*.  Accordingly,

11   Plaintiff's state law claim for medical malpractice should be dismissed without leave to amend.

12   **D. Statute of Limitations**

13       Section 1983 does not contain its own statute of limitations.  Therefore, the federal

14   courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims.

15   *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Johnson v. State of California*, 207 F.3d 650,

16   653 (9th Cir. 2000)(citation omitted).  In Nevada, the statute of limitations for  § 1983 actions

17   is two years. Nev. Rev. Stat. § 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

18   Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of

19   the injury which is the basis of the action. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760

20   (9th Cir. 1991).

21       "A statute of limitation defense may be raised by a motion to dismiss if the running of

22   the limitation period is apparent on the face of the complaint." *Vaughan v. Grijalva*, 927 F.2d

23   476, 479 (9th Cir. 1991); *see also Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984

24   (9th Cir. 1997).  Generally, the issue of equitable tolling cannot be decided on a motion to

25   dismiss.  *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995);

26   *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

27       It is not clear from the face of the complaint when Plaintiff knew or should have known

28

                                           10

of his injury.  Moreover, Defendant does not take into account that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v.  Valoff*, 422 F.3d 926, 942-43 (9th Cir.  2005) (citations omitted).  While Plaintiff provides some of the grievance documentation in connection with his Complaint, it is not clear from the face of the Complaint when Plaintiff *completed* the exhaustion process.

Accordingly, defendant Schlager's motion to dismiss Plaintiff's Complaint as time barred under the applicable statute of limitations should be denied.

Even if the court were to treat this as a motion for summary judgment, it is Plaintiff's position that he did not learn of his injury until 2011. (*See* Doc. # 36 at 2, 4, 6, 9 (Ex. A).)  He has at least created a genuine issue of material fact as to when he knew or should have known of the injury which is the basis of this action.

As a result, the court recommends that Defendant's motion be denied with respect to the argument that Plaintiff's claims are barred by the applicable statute of limitations.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order that Defendant's motion (Doc. # 32) be **DENIED** **EXCEPT THAT** to the extent Plaintiff has alleged a state law claim for medical malpractice, such claim should be **DISMISSED WITHOUT LEAVE TO AMEND**.

///
///
///
///
///
///
///
///
///

11

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: July 27, 2012.

_____
WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE