**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEVEN KINFORD, | 3:11-cv-00701-RCJ-WGC |
| Plaintiff, | |
| vs. | **ORDER** |
| ROBERT BANNISTER, *et al.*, | |
| Defendants. | |

Before the court is Plaintiff's "Motion for Leave to File An Amended Civil Rights Complaint" (Doc. # 76). Defendants Bannister, Johns and Mar have filed a "limited opposition" to the motion, mainly on the grounds that Plaintiff "fails to attach his amended complaint so that it is full and complete in and of itself . . . ." (Doc. # 78 at 2.) However, it appears that Defendants' counsel overlooks document 76-1 which, although not labeled as such, is Plaintiff's proposed amended complaint (Doc. # 76-1, Exh. 5, pp. 2-16). Thus, Plaintiff has complied with both LR 15-1(a) and this court's minute order of 10/19/12 (Doc. # 73).

The essence of the motion to amend is that Plaintiff states he was mistakenly operating under the assumption that Dr. Philip Schlager performed the surgery of which he originally complained.[1] When he discovered that Dr. James Pincock, and not Dr. Schlager, was the surgeon involved with his treatment, Plaintiff agreed to dismiss Dr. Schlager from this action (Doc. ## 73, 74); Dr. Schlager was dismissed on 11/27/12 (Doc. # 77). The proposed amended complaint asserts the same allegations

---

[1] He alleged Dr. Schlager failed to remove surgical hardware previously implanted in Plaintiff's face following reconstructive surgery necessitated by a motorcycle accident.

which were averred against Dr. Schlager as against Dr. Pincock, i.e., common law negligence claims and an Eighth Amendment claim of deliberate indifference to Plaintiff's serious medical needs. (Doc. 76-1 at 10-11.)

## I.  Legal Standards

Amendment of complaints should not be granted where the proposed amendment would be futile. *Forman v. Davis*, 371 U.S. 178 (1962). A proposed amended complaint should be rejected where it could not survive a motion to dismiss. *See, e.g.*, *Rodriguez v. U.S.*, 286 F. 3d 972, 980 (7th Cir. 2002); *Rose v. Hartford Underwriters Ins. Co.*, 203 F. 3d 417, 420 (6th Cir. 2000). Because Defendants were apparently unaware Plaintiff's motion (Doc. # 76) included a proposed amended complaint (Doc. # 76-1), Defendants did not substantively respond to Plaintiff's motion. As reflected herein, Defendants will be afforded another opportunity to do so. However, in the interim, the court will provide certain initial observations the court has regarding the viability of the proposed claims asserted against Dr. Pincock.[2]

## II.  Analysis of Proposed Amended Complaint

### A.  Common Law Claims of Professional Negligence (Medical Malpractice)

#### (1)  Absence of Medical Malpractice Affidavit

Plaintiff's proposed common law claims against Dr. Pincock do not satisfy NRS 41A.071. In this court's Report and Recommendation of 7/27/12 (Doc. # 47) regarding Dr. Schlager's motion to dismiss (Doc. # 39), this court noted that under Nevada state law, a "malpractice action" is "void *ab initio*" if the complaint is not accompanied by an affidavit of a qualified health care professional attesting to the alleged professional negligence. Report and Recommendation, Doc. # 47 at 10, citing Nev. Rev. Stat. 41A.071 and *Washoe Med. Ctr. v. Second Judicial Dist. Ct.*, 148 P. 3d 790, 794 (2006).

Subsequent to the issuance of this court's Report and Recommendation on Dr. Schlager's motion to dismiss, the Hon. Robert C. Jones, District Judge, issued an order which dealt with, *inter alia*, the affidavit requirement of Nev. Rev. Stat. 41A.071. (Doc. # 79.) Although Judge Jones noted Dr. Schlager's motion to dismiss was moot by reason of the parties' stipulation and the court's order

---

[2] This order is not a Report and Recommendation on the matter of plaintiff's motion to amend. That will follow later after further briefing, if any, on the issues addressed herein.

dismissing Defendant Schlager (Doc. # 77), Judge Jones further determined that a "pure issue of law" remained, i.e., the medical malpractice affidavit requirement, which was not mooted by reason of Plaintiff's motion to amend. (Doc. # 79 at 1.) Judge Jones concluded the medical affidavit is a non-waivable condition precedent to the commencement of a medical malpractice lawsuit governed by Nevada law. (*Id.* at 2.) His decision has become the "law of the case" in this matter and would govern, as Judge Jones noted, Plaintiff's attempt to effect an amendment of his action to allege a standard medical malpractice claim against Dr. Pincock. (*Id.* at 1.) As such, Plaintiff's motion to amend to assert a medical malpractice action in the absence of the appropriate affidavit is futile and must be denied in accordance with Judge Jones' order herein.

Apparently anticipating this probable objection to his proposed amended complaint, Plaintiff seeks to be excused from Nevada's statutory affidavit requirement by contending in his motion he is a confined inmate and does not have access to medical personnel. (Doc. # 76 at 8.) He asserted a similar argument in his objection to the Report and Recommendation (Doc. # 75 at 2-3).[3] Whether the law affords Plaintiff relief from the affidavit requirements of Chapter 41A because of his prisoner status does not appear to have been specifically adjudicated, but the decision of Judge Jones herein, and the opinions of the Nevada Supreme Court, leave little doubt that medical malpractice actions filed without the statutorily-required affidavit do not state a claim for relief and that no exceptions to this obligation would seemingly be authorized.[4]

In *Borger v. Eighth Judicial Dist. Court*, the Nevada Supreme Court, albeit in *dicta*, concluded "NRS 41A.071 clearly mandates dismissal, *without leave to amend*, for complete failure to attach an affidavit to the complaint. This interpretation is consistent with the underlying purpose of the measure, which is to ensure that such actions be brought in good faith based upon competent expert opinion." 120 Nev. 1021, 1029, 102 P.3d 600, 606 (2004) (emphasis added); *accord Collins v. MacArthur*, No. 3:05-cv-237-PMP-VPC, 2006 WL 1966728, at *2 (D. Nev. 2006); *cf. Washoe Med. Ctr. v. Second Judicial Dist. Court of State of Nevada ex rel. County of Washoe*, 122 Nev. 1298, 1303-04, 148 P.2d 790, 793-94

---

[3] This contention was not addressed in Judge Jones' order (Doc. # 79).

[4] Discussed *infra* in § II A (2) is whether the affidavit requirement may be bypassed by the Nevada Legislature's codification of certain *res ipsa loquitur* exceptions in medical malpractice actions.

1 (2006) (holding "a medical malpractice complaint filed without a supporting medical expert affidavit is void ab initio . . ." and, as a consequence, "it does not legally exist and thus it cannot be amended [under Rule 15(a) of the Nevada Rules of Civil Procedure]"); *Fierle v. Perez*, 219 P.3d 906, 914 (Nev. 2009) (concluding "medical malpractice and professional negligence claims made in a complaint that become void ab initio for lack of the attachment of an expert affidavit may not be cured by the amendment of that complaint . . . .").

Thus, plaintiff's attempts to amend his action to assert a standard medical malpractice action without the affidavit required by Nev. Rev. Stat. 41A.071 is futile and will be denied in due course.[5]

**(2) Whether Plaintiff Articulates a Viable "*Res Ipsa*" Claim under Nev. Rev. Stat. 41A.100**

Although not clearly articulated, Plaintiff's motion and proposed amended complaint suggest another ground upon which Plaintiff might be relieved of the affidavit requirement that a medical negligence cause of action may be pursued without an affidavit, i.e., under the *res ipsa loquitur* doctrine. At page 7 of Plaintiff's motion, he makes reference to this doctrine, asserting that a medical malpractice action which is predicated upon the *res ipsa loquitur* doctrine is exempted from the affidavit requirements of Nev. Rev. Stat. 41A.071. (Doc. # 76 at 7.)  The court will preliminarily examine the viability of such allegations, recognizing that *pro se* inmate civil rights cases are to be liberally interpreted.  *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 623 (9th Cir. 1988).

Nev. Rev. Stat. 41A.100 "codified" the common law *res ipsa loquitur* doctrine as it applies to certain medical malpractice events. *Szydel v. Markman*, 117 P.3d 200 (Nev. 2005); *Fierle v. Perez*, 219 P.3d 906 (Nev. 2009). Where a medical malpractice action is founded upon one of certain events enumerated in Nev. Rev. Stat. 41A.100, a plaintiff is not only exempted from having to present expert testimony at trial to present a viable case in chief, but the affidavit requirement is waived as well.  An example of a *res ipsa* claim is where ". . . a foreign substance other than medication or a prosthetic device was unintentionally left with the body of a patient following surgery . . . ." (*Id*. at Section (1)(a).)

The apparent conflict between Nev. Rev. Stat. 41A.071 (which requires a complaint to be

---

[5] Although this court's decision on the waiver of the affidavit requirement is "dispositive" in nature, the conclusion reached herein is required in any event by Judge Jones ruling (Doc. # 79).  Nevertheless, it will be again addressed in the eventual Report and Recommendation this court will be issuing with respect to Plaintiff's motion to amend.

4

accompanied by an expert affidavit attesting to the professional negligence of which a plaintiff complains ) and Nev. Rev. Stat. 41A.100 (which allows a medical malpractice action predicated on one of the statutory five *res ipsa* circumstances to proceed without the required affidavit or expert testimony) was resolved in *Szydel*, *supra*. In that case the Nevada Supreme Court ". . . concluded that the expert affidavit requirement does not apply when the malpractice action is based solely on the *res ipsa loquitur* doctrine." *Fierle*, *supra*, 219 P.3d at 913, citing *Szydel*, 219 P.2d at 454.

Herein, Plaintiff states "this claim is brought pursuant to the doctrine of res ipsa loquitur and Plaintiff is not required to provide an affidavit in support of his civil complaint," citing NRS 41A.071, NRS 41A.700 and *Fierle v. Perez*, 219 P3d 906 (Nev. 2009). (Doc. # 76 at 7-8.) In an apparent attempt to plead a medical malpractice/*res ipsa loquitur* claim, Plaintiff avers Dr. Pincock failed to remove broken screws, leaving "foreign material in Plaintiff's face." (*Id*. at 5.) He alleges Dr. Pincock failed to remove implants (*id.* at 10-11). The question becomes whether these averments constitute viable *res ipsa* allegations under the provisions of Nev. Rev Stat. 41A.100. For the reasons outlined herein, the court concludes they do not.

Nev. Rev. Stat. 41A.100 requires expert testimony or material from recognized medical texts or treatises to demonstrate the alleged deviation from the accepted standard of care. However, the Nevada legislature in that statute also codified the *res ipsa loquitur* doctrine in the medical malpractice arena by adopting five circumstances where professional testimony/learned treatises are not required to establish malpractice. More importantly and as applicable herein, a complaint which avers a prima facie case under any one of the five statutory exceptions is also relieved from the affidavit requirement of Nev. Rev. Stat. 41A.071. *Fierle*, *supra*, at 913.

The issue thus becomes when has a *res ipsa* plaintiff satisfactorily averred a viable medical malpractice action. The Nevada cases do not speak to the standards to be employed with regard to *pleading* standards attendant to Nev. Rev. Stat. 41A.100, such as herein in the context of a motion to amend (which should not be granted if the proposed amendment is futile). In *Szydel*, the Nevada Supreme Court stated that a "*res ipsa* claim filed without an expert affidavit must, when challenged by the defendant in a pretrial or trial motion, meet the prima facie requirements for a *res ipsa loquitur* case." *Szydel*, *supra*, at 205. When such a challenge is mounted, "the plaintiff must present facts and evidence

5

1 that show the existence of one or more of the situations enumerated in NRS 41A.100(1)(a)-(e)." (*Id.*)

2 While the Nevada Supreme Court noted a medical defendant can challenge the viability of a medical malpractice/*res ipsa* action via a motion, the court did not give any guidance as to evaluating *res ipsa* exception allegations at initial stages, such as herein where Plaintiff seeks to amend his complaint to assert a medical malpractice action based upon *res ipsa* standards. However, as discussed above, an amendment which is obviously futile must not be allowed to proceed. Similarly, the Nevada Supreme Court held that the legislative purpose of enacting Chapter 41A was ". . . to ensure that parties *file* malpractice cases in *good faith*, *i.e.*, to prevent the *filing* of *frivolous* lawsuits." *Borger*, *supra*, at 604; footnote omitted; emphasis added. Accordingly, an amendment which asserts a frivolous action or is not lodged in good faith should not be allowed to be filed.

Thus, while post-screening processes allow a defendant to challenge the viability of a *res ipsa* medical malpractice claim (e.g., a motion to dismiss under Fed. R. Civ. P 12(b)), it would nonetheless appear that the court would be shirking its obligations of not prohibiting futile amendments if on the face of the complaint the allegations were not lodged in good faith, were "frivolous" or simply fail to state a claim under Nev. Rev. Stat. 41A.100. Presumably the court could allow such claims to proceed under the expectation that at some point in time the defendant doctor would lodge a challenge to the non-affidavit, *res ipsa* complaint. But to again quote the Nevada Supreme Court, the "legislative package" of Chapter 41A was intended ". . . to prevent the *filing* of frivolous lawsuits." *Borger*, *supra*; emphasis added. If the proposed amendment was invalid on its face, the court would be permitting a frivolous lawsuit to be *filed* in contravention to the intent of Nev. Rev. Stat. 41A.100 and also in contravention to the authorities cited in § I herein that a proposed amended complaint should be rejected where it could not survive a motion to dismiss.

Thus, the court must turn to the question of whether Plaintiff's proposed amended medical malpractice complaint, filed without an affidavit, may nonetheless proceed under one of the *res ipsa loquitur* provisions of Nev. Rev. Stat 41A.100. The only possible section of Nev. Rev. Stat. 41A.100 which might apply to plaintiff allegations would be 1(a) thereof, i.e., a "foreign substance other than medication or a prosthetic device . . . unintentionally left within the body of a patient following surgery."

Without specifically citing Nev. Rev. Stat. 41A.100(1)(a), Plaintiff's averments seem to possibly

6

implicate this section by alleging Dr. Pincock failed to remove broken screws and implants, leaving "foreign materials in Plaintiff's face." (Doc. # 76 at 5, 10-11). However, these screws, implants or foreign materials were not alleged by plaintiff to have been placed within Plaintiff's body *during* Dr. Pincock's surgery. Instead, these materials were originally implanted by Washoe Medical Center physicians when Plaintiff "underwent extensive reconstructive surgery to his face" following a motorcycle accident: "plates and screws were placed under the front facial skin areas of plaintiff" (*id*). He claims that his body started rejecting these implants and was referred to Dr Schlager who "recommended" corrective surgery, i.e., remove and/or repair of screws and plates in plaintiff's face." (*id*). Plaintiff thereafter underwent "corrective surgery" in January, 2009" (*id*) and now avers Dr. Pincock "failed to remove all foreign material from his face" and also "failed to remove a broken screw and/or metal plate." (*Id*. at 6-7; *see also* Doc. # 76-1 at 5 and 10.)[6]

It is the opinion and conclusion of this court, however, that failing to remove *previously implanted* hardware, which is the gravamen of Plaintiff's *res ipsa* claim for relief, differs markedly from the statutory *res ipsa* circumstance of *leaving behind and failing to remove* such a device following surgery. For example, in *Szydel*, an unaccounted for surgical needle was, post-surgery, discovered by fluoroscopy to have been left "in the middle of Szydel's right breast." In the subsequent litigation, this omission was found to satisfy the *res ipsa* exception of Nev. Rev. Stat. 41A.100(1)(a). However, errantly leaving behind a surgical device which the physician used *during* surgery, is markedly different from not removing previously implanted hardware. While the failure to do so might conceivably constitute professional negligence (which would have to be the subject of a medical affidavit), such circumstances do *not* state a viable *res ipsa* claim under Nev. Rev. Stat. 41A.100(a).

For the foregoing reasons, the court concludes Plaintiff's averments fail to state a viable Nev. Rev. Stat. 41A.100 *res ipsa loquitur* cause of action. For any medical malpractice claim to proceed herein, an affidavit under Nev. Rev. Stat. 41A.071 is a prerequisite to proceeding with a medical malpractice claim. Accordingly, the attempted amendment is futile and should be denied.

---

[6] At page 5 of his proposed amended complaint (Doc. # 76-1), Plaintiff alleges Dr. Pincock "broke a metal retaining screw and failed to repair a metal plate in plaintiff's face." These averments are clearly the subject of the 41A.071 expert affidavit and would not qualify as one of the *res ipsa* exceptions of 41A.100. *See*, *Fierle*, *supra*, 219 P.3d at 913-914.

7

Thus, as this court concluded in its Report and Recommendation with respect to Plaintiff's common law malpractice claims against Dr. Schlager, and as Judge Jones affirmed, Plaintiff would *not* be relieved from his obligation to file an affidavit of a qualified medical practitioner asserting Dr. Pincock allegedly violated the standard of care with respect to his treatment of Plaintiff. For the reasons stated above, Plaintiff's failure to submit a medically competent affidavit with his complaint voids his action at the outset. Nor does the *res ipsa loquitur* provision of Nev. Rev. Stat. 41A.100(a) afford Plaintiff any relief. Plaintiff's proposed amendment to assert a negligence action against Dr. Pincock would be futile because it could simply not state an actionable claim for relief.[7]

**B. Section 1983 Claims: Deliberate Indifference to a Serious Medical Need and Statute of Limitations Issues.**

Count II of the proposed amended complaint basically re-states an "Eighth Amendment" claim against Dr. Pincock as it formerly did as against Dr. Schlager (Doc. # 76-1 at 10). It alleges that former defendant Dr. Schlager initially evaluated Plaintiff for possible corrective surgery "to remove and/or repair facial implants." (*Id.*) Plaintiff now avers, however, that NDOC thereafter hired Dr. Pincock "to perform the recommended procedures" and that on January 5, 2009,

> Defendant Pincock performed a portion of the recommended procedures, performing surgery to the facial areas of Plaintiff. Defendant Pincock failed to remove screws and/or implants, broke a screw during surgery, and failed to remove or repair other devices, thus leving (sic) foreign objects in plaintiff's face necessitating another corrective procedure.

(Doc. # 76-1 at 10.)

Plaintiff alleges that prior to performing the surgery, Dr. Pincock "touched the surface areas of Plaintiff's face with his fingers and could easily feel and determine the implants were loose and/or otherwise being rejected by Plaintiff's body causing severe pain." (*Id.* at 11.) The failure to remove or repair the "facial implants" Plaintiff alleges "resulted in further damage to the implants (broken screw) . . . [and] resulted in further infliction of severe pain, cruel and unusual punishment . . . ." (*Id.*) From these allegations, Plaintiff concludes that "Defendant Pincock's actions were negligent and/or deliberately indifferent to Plaintiff's serious medical needs." (*Id.* at 10-11.)

---

[7] Again, this order should not be interpreted as a Report and Recommendation on the disposition of Plaintiff's motion to amend to assert a medical malpractice *res ipsa* claim; that will follow later.

The "negligence" (i.e., medical malpractice) component of Count II was resolved above. The two remaining § 1983 issues which are presented by the proposed amendment are (1) whether these averments state a viable Eighth Amendment cause of action of deliberate indifference to serious medical needs, and (2) whether the Eighth Amendment claims, assuming they are otherwise viable, are barred by the statute of limitations. The court will discuss these concerns in that order.

**(1) Deliberate Indifference** [8]

It is well-settled that medical malpractice does not become a constitutional violation merely because the Plaintiff is a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Even gross negligence has not been shown to satisfy the deliberate indifference standard. *Togucki v. Chung*, 391 F. 3d 1051, 1060 (9th Cir. 2004). This has been described as a "high legal standard." (*Id*.)[9]

A prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights). A difference of opinion concerning appropriate medical care – either between a physician and the prisoner, or between medical professionals – does not amount to deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *see also Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not cognizable under section 1983).

For a difference of opinion to amount to deliberate indifference, the inmate "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Snow*, 681 F.3d at 988 (internal quotations and citation omitted); *accord Jackson v. McIntosh*, 90 F.3d

---

[8] For the purposes of this discussion, the court assumes Plaintiff's medical needs may be characterized as "serious." The issue addressed at this juncture is the viability of the allegations from a "deliberate indifference" standpoint.

[9] It should be clarified that this court's discussion of Plaintiff's medical malpractice claims expressed no opinion that Dr. Pincock was or was not "negligent" with respect to his treatment of Plaintiff. Instead, this court's findings are limited to Plaintiff's noncompliance with Nevada's statutory scheme for bringing common law medical malpractice actions.

9

330, 332 (9th Cir. 1996).

In *West v. Atkins*, 487 U.S. 42 (1988), the United States Supreme Court concluded that "a physician who is under contract with the State to provide medical services to inmates at a state-prison hospital on a part time basis acts 'under color of state law' within the meaning of § 1983 when he treats an inmate." (*Id.*)  The court also confirmed "that deliberate indifference to a prisoner's serious medical needs, whether by a prison doctor or prison guard, is prohibited by the Eighth Amendment." (*Id.*, at 48; citations omitted.)  Justice Scalia, in a concurring opinion, stated that

> ". . . a physician who acts on behalf of the State to provide needed medical attention to a person involuntarily in state custody (in prison or elsewhere) and prevented from otherwise obtaining it, and who causes physical harm to such person by deliberate indifference, violates the Fourteenth Amendment's protection against the deprivation of liberty without due process."

*(Id*, at 57; citations omitted.)

The court is mindful that it previously found similar allegations, accepted as true and liberally interpreted at this stage of proceedings, stated a colorable claim as against Dr. Pincock's predecessor, i.e., Dr. Schlager.  (Report and Recommendation, Doc. # 47 at 8-9.)  Because of the court's previous findings with respect to Dr. Schlager, and because similar averments are now being asserted against Dr. Pincock, logic would suggest the same conclusions should be reached as to Dr. Pincock, i.e., that Plaintiff states a colorable claim of deliberate indifference as against Dr. Pincock.  Nevertheless, for the reasons stated above, the court will afford Defendants an opportunity, if desired, to contest the viability of the "deliberate indifference" claims Plaintiff seeks to assert in his proposed amended complaint as against Dr. Pincock.

**(2)  Statute of Limitations**

Section 1983 does not contain its own statute of limitations.  Therefore, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000)(citation omitted).  In Nevada, the statute of limitations for § 1983 actions is two years.  Nev. Rev. Stat. § 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).  Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.

1 *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991).

2       "A statute of limitation defense may be raised by a motion to dismiss if the running of the limitation period is apparent on the face of the complaint." *Vaughan v. Grijalva*, 927 F.2d 476, 479 (9th Cir. 1991); *see also Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). Generally, the issue of equitable tolling cannot be decided on a motion to dismiss. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

      It is not clear from the face of the complaint when Plaintiff knew or should have known of his injury. At a hearing on this case on October 19, 2012, the court advised Plaintiff that the proposed amended complaint he was contemplating filing posed a potential problem with respect to whether the civil rights action he wanted to assert against Dr. Pincock might be barred by the statute of limitations. The court instructed Plaintiff to set forth in his motion "the reasons why discovery of the incorrectly named Defendant was not known earlier." (Doc. # 73 at 2.)

      In response to the court's instructions, Plaintiff's motion states he "failed to properly identify James L. Pincock as the party who performed the corrective surgery on Plaintiff's face on January 5, 2009, due to Plaintiff's inability to receive and/or review medical files possessed by NDOC officials." (Doc. 76 at 4.) Plaintiff's representations in his motion to amend, although somewhat confusing, assert he did not have access to his complete medical files (he infers there may have been more than one such file to which he did not have earlier access). (*Id*.). He contends that his medical files were "re-organized" by NDOC and that these files were "presented in this arrangement for the first time to Plaintiff on November 2, 2012" (*id*.).

      Thus, while Plaintiff's proposed amended complaint presents potential issues of such claims being barred by the statute of limitations, he nonetheless has provided a colorably credible explanation, at least for pleading purposes (which, again, are liberally interpreted because of Plaintiff's pro se status), for the delay in pursuing his claim against Dr. Pincock. However, as with the "deliberate indifference" issue, Defendants have not addressed the statute of limitations issue either and will be afforded the

1  opportunity, if desired, to do so.[10]

### III. Conclusion

Because Defendants filed only a "Limited Opposition" to Plaintiff's motion, it appears Defendants' counsel overlooked Plaintiff's proposed amended complaint (Doc. # 76-1). Accordingly, Defendants will be provided the opportunity to submit a further response to Plaintiff's motion which seeks to amend the action by the proposed addition of Dr. Pincock, but only as to the proposed Eighth Amendment claims (the court has already concluded the common law negligence claims are void due to the absence of the required medical affidavit). Defendants shall have until **December 28, 2012**, to file any further supplemental response. Also, if Plaintiff desires, he may file a memorandum, also **on or before December 28, 2012**, with regard to the court's initial analysis of the *res ipsa loquitur* medical malpractice averments plaintiff is asserting here. The parties shall have until **January 14, 2013,** to file reply memoranda, if any. Following briefing, this court will issue a Report and Recommendation on the issues raised in Plaintiff's motion to amend.

**IT IS SO ORDERED.**

DATED:  December 18, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

---

[10] Also not addressed herein is the "State action" requirement of § 1983 cases. In this court's Report and Recommendation of July 27, 2012 (Doc. # 47), this court found that plaintiff alleged sufficient averments which could reasonably be interpreted that Dr. Schlager was acting under color of state law. (*id*. at 6-8). While this court suggested that such averments might be better challenged under a Motion for Summary Judgment, in the context of defendant Schlager's Motion to Dismiss, the court found that Dr. Schlager's "concession" that he "was a private physician who provided medical consulting services to an inmate at NDOC's request" was sufficient to state a viable color of state law claim (Doc. 47 at 7-8). *See*, *West v. Atkins*, 487 U.S. 42 (1988).